IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LUCY EDITH DELORES SANDERS,
     Plaintiff,

vs.                                   Case No.: 5:14cv161/WS/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court pertaining to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Acting Commissioner of the Social Security Administration ("the Commissioner of the SSA") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

     Upon review of the record before this court, it is the opinion of the undersigned that the determination of the Commissioner is not supported by substantial evidence.  Thus, the undersigned recommends that the decision of the Commissioner be reversed and remanded for further proceedings.

I.     PROCEDURAL HISTORY

     On July 7, 2010, Plaintiff filed an application for SSI in which she alleged disability beginning June 1, 2010 (tr. 11).[1]  Her application was denied initially and on reconsideration.  At Plaintiff's request, an administrative law judge ("ALJ") held a hearing that was conducted by video

---

[1]  All references to "tr." refer to the transcript of the SSA record filed on October 30, 2014 (doc. 9).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other source.

teleconferencing on August 24, 2012, at which Plaintiff—who was represented by counsel—testified.  No vocational expert ("VE") was present to testify, and the ALJ obtained no other evidence from a VE.  On October 4, 2012, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 11–20).  On May 6, 2014, the Appeals Council denied Plaintiff's request for review (tr. 1–3).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.    FINDINGS OF THE ALJ

The ALJ made the following findings in his October 4, 2012, decision (tr. 11–20):

1)    Plaintiff has not engaged in substantial gainful activity since July 7, 2010, the date of her application for SSI benefits.[2]

2)    Plaintiff has the following "severe" impairments: depression, bipolar disorder, anxiety, and schizoaffective disorder.  Her medically determinable impairments of hyperlipidemia, hypertension, and diabetes are "non-severe."

3)    Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4)    Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: the work must be limited to simple, routine, and repetitive unskilled tasks at a non-production rate and no-pace work, but she can perform goal-oriented work.  The work cannot involve serving the public, but she can interact appropriately with co-workers and supervisors.

5)    Plaintiff has no past relevant work.

6)    Plaintiff was born on October 2, 1958.  Thus, on the date her SSI application was filed she was fifty-one years of age, which is defined as an individual closely approaching advanced age.

---

[2]  Thus, the time frame relevant to this appeal is July 7, 2010 (date of application for SSI) through October 4, 2012 (date of the ALJ's decision).  See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

7)      Plaintiff has a limited education and is able to communicate in English.

8)      Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

9)      In light of Plaintiff's age, education, work experience, and RFC, under the framework of § 204.00 of the Medical-Vocational Guidelines jobs exist in significant numbers in the national economy that Plaintiff can perform.

10)     Plaintiff has not been under a disability, as defined in the Act, since July 7, 2010, the date she filed her SSI application.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence

preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must

then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d
1007, 1011 (11th Cir. 1987).

IV.     ISSUE PRESENTED

        In this appeal, Plaintiff does not challenge any of the ALJ's findings of fact concerning her
physical or psychological conditions.[3]  Rather, she submits that the ALJ erred by failing to consult
a VE to assess the erosion of the occupational base in light of Plaintiff's non-exertional impairments
and instead improperly relied on § 204.00 of the Medical-Vocational Guidelines ("the Grids")[4] as
a framework for finding that Plaintiff is not disabled.[5]  The Commissioner responds that because
"Plaintiff's non-exertional limitations did not significantly affect her ability to do unskilled work,
the ALJ was not required to elicit VE testimony, and the ALJ properly relied on the Grids to find
Plaintiff retained the ability to perform a significant number of jobs in the national economy and was
therefore not disabled" (doc. 12 at 4–6).

V.      DISCUSSION

        The ALJ may not rely on the Grids exclusively when a "claimant is unable to perform a full
range of work at a given residual functional level or when a claimant has non-exertional impairments
that significantly limit basic work skills."  Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir.
2004).  In Phillips, the court "interpreted 'significantly limit basic work skills' as limitations that
prohibit a claimant from performing 'a wide range' of work at a given work level."  Id. at 1243; see

---

        [3]  In her memorandum the Commissioner cites to Plaintiff's medical record only once (see doc. 12 at 3), and
in her memorandum Plaintiff does not cite to her medical record at all.  Given this lack of citation to the medical record
by the parties, Plaintiff's failure to challenge the ALJ's factual findings concerning her physical or psychological
conditions, and the nature of the parties' arguments, this Report and Recommendation likewise does not outline or cite
to the medical record.

        [4]  The Grids, which consist of a matrix based on exertional levels and vocational factors, may be used to direct
a conclusion of disabled or not disabled or it may be used as a framework for making that determination.  See generally
20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).  The matrix results constitute "administrative notice" as to the number
of unskilled jobs that exist in the national economy at the various exertional levels.  Thus, when all the claimant's
vocational factors coincide with the criteria in the matrix, "the existence of jobs is established."  20 C.F.R. Pt. 404, Subpt.
P, App. 2 § 200.00(b).

        [5]  Plaintiff actually identifies three separate grounds of error:  the ALJ erred by 1) failing to elicit the testimony
of a VE; 2) failing to give specific examples of occupations Plaintiff could perform; and 3) failing to identify the specific
number of jobs existing in the national economy which Plaintiff could perform (doc. 11 at 1–2).  All three grounds are
encompassed in the single contention that the ALJ erred by failing to obtain VE testimony and instead relied on the Grids
to reach a disability determination.

*also* <u>Foote</u>, 67 F.3d at 1559 (indicating that the ALJ must determine "whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level") (internal quotation marks and citations omitted).  Thus, the ALJ may not rely exclusively on the Grids but rather should consult a VE if the ALJ determines 1) that the claimant is unable to perform a full range of work at a given RFC exertional level, or 2) that the claimant's non-exertional limitations prevent a wide range of work at the stated RFC.  *Id.* at 1243; *see also* <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002) ("If nonexertional impairments exist, the ALJ may use Medical–Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform.") (citing <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077–78 (11th Cir. 1996)).

As noted above, the ALJ in this case determined at step five that Plaintiff is exertionally capable of the full range of all types of work, with the following non-exertional limitations: the work must be "no-pace" and limited to simple, routine, and repetitive unskilled tasks at a non-production rate and it cannot require serving the public.  Plaintiff may perform goal-oriented work and work that requires her to interact appropriately with co-workers and supervisors.  Here, the first part of the <u>Phillips</u> inquiry (i.e., whether the claimant is able to perform a full range of work at a given RFC exertional level) is satisfied, because the ALJ found—and Plaintiff does not dispute—that Plaintiff retains the exertional capacity to perform the *full* range of *all* types of work.  Next, the court concludes that the ALJ's finding that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels" (tr. 19) arguably is facially sufficient to satisfy the second part of the <u>Phillips</u> inquiry (i.e., whether the claimant's non-exertional limitations prevent a wide range of work at the stated RFC).  The court nevertheless must still consider whether the finding is supported by substantial evidence.  As discussed below, the Commissioner argues that it is.  The court disagrees.

According to the Commissioner, Plaintiff's non-exertional limitations do not preclude performance of any of the basic demands of unskilled work.  The Commissioner notes that "[b]y definition, unskilled work involves little or no judgment to do simple duties that one can learn on the job in a short time.  <u>See</u> C.F.R. § 416.968(a)" (doc. 12 at 5).  Moreover, the Commissioner states

The basic mental demands of competitive, remunerative, unskilled work generally require (on a sustained basis) understanding, remembering, and carrying out simple instructions; making simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  SSR 85-15, 1985 WL 56857, at *4; SSR 96-9p, 1996 WL 374185.[6]  These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis, see SSR 85-15.  None of the definitions for unskilled work require meeting a particular production rate or pace or serving the public.  Thus, the RFC did not include limitations beyond the basic demands of unskilled work.

(doc. 12 at 5–6).

In Vuxta v. Comm'r of Soc. Sec., 194 F. App'x 874, 878 (11th Cir. 2006) (unpublished),[7] the Eleventh Circuit remanded for further proceedings after finding that although "a limitation to simple tasks is already contained within the unskilled limitation, and is not a limitation above and beyond that classification," "a limitation to repetitive tasks [ ] is not contained within the definition of unskilled." Id. Following Vuxta, several cases from the Middle District of Florida have similarly held that limitations to repetitive, as well as routine, tasks "are not within the definition of unskilled." See Justiniano v. Comm'r of Soc. Sec., No. 6:11-cv-1576-Orl-GJK, 2013 WL 625545, at *11 (M.D. Fla. Feb. 20, 2013) (finding ALJ's determination that Plaintiff's additional limitations had little or no effect on the occupational base was not supported by substantial evidence because the ALJ "failed to provide any explanation or analysis regarding Claimant's limitation to routine and repetitive tasks"); Welcz v. Comm'r of Soc. Sec., No. 6:12-cv-106-Orl-22GJK, 2013 WL 436166 (M.D. Fla. Feb. 5, 2013) (same) (adopting report and recommendation in Welcz v. Comm'r of Soc. Sec., No. 6:12-CV-106-Orl-22, 2012 WL 7006308, at *13 (M.D. Fla. Dec 17, 2012)); Dever v. Comm'r of Soc. Sec., No. 6:11–cv–203–Orl–KRS, 2012 WL 3537072, at *3 (M.D. Fla. Aug. 15,

---

[6]   Social Security Ruling ("SSR") 85-15 [titled "Titles II and XVI: Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments"], and SSR 96-9p [titled "Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work"] both discuss unskilled work.

[7]   In the Eleventh Circuit, unpublished cases are not considered binding precedent but may be cited as persuasive authority.  See U.S. Ct. of App. 11th Cir. Rule 36-2.

2012) (indicating that limitation to repetitive tasks not included in the definition of unskilled work); <u>Coffin v. Comm'r of Soc. Sec.</u>, No. 6:09–cv–2061–Orl–DAB, 2011 WL 806674, at *8 (M.D. Fla. Mar. 2, 2011) (indicating that limitation to repetitive and routine tasks not included in the definition of unskilled work); *see also* <u>Chabriel v. Comm'r of Soc. Sec.</u>, No. 6:13cv1711-Orl-28TBS, 2015 WL 269054, at *5 (M.D. Fla. Jan. 21, 2015) (stating that ALJ's reference to definition of unskilled work was not evidence that Plaintiff's non-exertional limitations were not significant).  *But see* <u>Narlock v. Commissioner of Social Security</u>, No. 6:07–cv–524–Orl–31KRS, 2008 WL 3364690, at *7 (M.D. Fla. Aug.8, 2008) (reversing on other grounds but finding that limitations to simple, routine instructions are sufficiently accounted for by unskilled work); <u>Anderson v. Astrue</u>, No. 2:11-00046N, 2011 WL 3843683, at *3 (S.D. Ala. Aug. 30, 2011) (limitations to simple and routine tasks are consistent with the regulatory definition of unskilled work).  *See also* <u>Allison v. Apfel</u>, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000) (unpublished) (stating that ALJ's limitation to simple, routine, repetitive tasks means unskilled light work).

In this case, the ALJ stated that he " accounted for [Plaintiff's] acute and episodic psychiatric symptoms by limiting her to simple, routine, and repetitive tasks with no contact with the general public" (tr. 18).  The ALJ did not, however, explain why Plaintiff's limitation to routine and repetitive tasks fully "accounted for" her psychiatric symptoms.  Nor does the Commissioner point to any regulation or rule the ALJ cited that includes this sort of limitation in the definition of unskilled work.  Although, as noted, some district courts within the Eleventh Circuit (and one Circuit Court of Appeals from another circuit, in an unpublished decision) have concluded that a limitation to routine and repetitive tasks is encompassed within (or consistent with) the definition of unskilled work, the undersigned finds the positions taken in <u>Vuxta</u>, <u>Justiniano</u>, <u>Welcz</u>, <u>Dever</u>, and <u>Coffin</u>—which rely on the SSA's definitions of "unskilled"—to be more persuasive.  The court therefore concludes that the ALJ should have provided a more thorough explanation or analysis concerning his finding that Plaintiff is limited to routine and repetitive tasks, which tasks are not within the definition of "unskilled."  Reversal and remand for further proceedings is therefore warranted for the ALJ to do so and, if necessary, elicit the testimony of a VE.

The court also notes the ALJ's finding that Plaintiff has "no more than moderate limitations in social functioning and maintaining concentration, persistence, and pace" (tr. 14), resulting in her

ability to only perform work that is "no-pace" and does not require a production rate (tr. 16). On remand, the court further recommends that the ALJ reexamine whether these non-exertional limitations require testimony from a VE to determine whether Plaintiff is precluded from performing a wide range of work at any exertional level. *See* <u>Sorrow v. Colvin</u>, No. 1:13-cv-02883-AJB, 2015 WL 630429, at *14–15 (N.D. Ga. Feb. 12, 2015) (stating that ALJ's findings of mild difficulties with social functioning and moderate difficulties with concentration, persistence, or pace should require testimony of VE to determine whether non-exertional limitations significantly compromise claimant's work skills or preclude her from performing a wide range of work); <u>Frizzo v. Astrue</u>, No. 6:11-cv-1318-Orl-31TEM, 2012 WL 3668049, at *13 (M.D. Fla. Aug. 7, 2012) (indicating that, in light of ALJ's findings that claimant had mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and could not meet quotas or similar production requirements, it was "conceivable" that such limitations would have more than a minimal effect on the vocational base); *see also* <u>Bonds v. Astrue</u>, No. 07–1135, 2008 WL 2952446, at *11–12 (D.S.C. July 29, 2008) (indicating that whether Plaintiff's moderate impairment in the area of concentration, persistence and pace eroded the occupational base and to what degree it was eroded was a determination for VE); <u>Chapa v. Astrue</u>, No. 05–253, 2008 WL 952947, at *6 (N.D. Tex. Apr. 8, 2008) (reversing because ALJ applied Grids instead of obtaining VE testimony where claimant had moderate impairment in the area of concentration, persistence and pace). Finally, the court also recommends that upon remand the ALJ revisit the need for VE testimony in light of his finding that a restriction to "unskilled" work adequately accounts for Plaintiff's non-exertional limitation of not being able to serve the public. *See* <u>Coffin</u>, 2011 WL 806674, at *9 (the ALJ should not have determined that a restriction to "unskilled" work sufficiently accounted for finding that claimant could sustain only limited contact with the public, co-workers, and supervisors).

In sum, the court finds that the ALJ's determination that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels" is not supported by substantial evidence. On remand, the ALJ should better explain why a limitation to simple, routine, repetitive work does not preclude a wide range of all types of work and, if appropriate, elicit testimony from a VE. It is further recommended that the ALJ revisit the need for

VE testimony and the proper reliance on the Grids in connection with Plaintiff's other non-exertional limitations, specifically that she can only perform work that is "no-pace," does not require a production rate, and does not require serving the public.

VI.    CONCLUSION

For the foregoing reasons, the undersigned concludes that the Commissioner's decision should not be affirmed and that this matter should be reversed and remanded for additional proceedings.    *See* 42 U.S.C. § 405(g); <u>Foote</u>, 67 F.3d at1556 (remanding for additional administrative proceedings).

Accordingly, it is respectfully **RECOMMENDED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this Report and Recommendation.  The clerk should be directed to close the file.

At Pensacola, Florida this 27<u>th</u> day of April 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

        Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  __Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control__.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; __United States v. Roberts__, 858 F.2d 698, 701 (11th Cir. 1988).